IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SENIOR HOUSING MANAGERS, LLC, an Oregon limited liability company,<br><br>Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>HIGHWAY 2 DEVELOPMENT, LLC, d/b/a Pemberly Place, a Nebraska limited liability company,<br><br>Defendant and Counterclaimant. | 4:18-CV-3167<br><br><br><br>MEMORANDUM AND ORDER |

This dispute involves the construction and management of an assisted living center in Lincoln, Nebraska. The defendant, Highway 2 Development, LLC, contracted with the plaintiff, Senior Housing Managers, LLC, to provide certain management and oversight services during the construction, opening, and operation of Pemberly Place, a new assisted living facility owned and operated by Highway 2.

Senior Housing sued Highway 2 alleging breach of contract, violation of the Nebraska Uniform Deceptive Trade Practices Act (UDTPA), and unjust enrichment after Highway 2 terminated the parties' Management Agreement (filing 1-1). Highway 2 counterclaimed alleging contract, tort, and statutory claims related to actions taken by Senior Housing during the construction and opening of Pemberly Place.

This matter is before the Court on Senior Housing's motion to dismiss Highway 2's amended counterclaim (filing 19) pursuant to Fed. R. Civ. P.

12(b)(6). For the reasons set forth below, the Court will grant Senior Housing's motion with respect to Highway 2's negligence and UDTPA claims and deny the remainder of the motion.

## I. BACKGROUND

Senior Housing is an Oregon limited liability company specializing in the development, operation, management and marketing of senior living facilities. *See generally* filing 13; *see also* filing 1-3 at 5. Christian Mason is the President and CEO of Senior Housing. Filing 13 at 6. It appears that Senior Housing and Highway 2 began working together sometime in 2015. *See* filing 13 at 7. However, the only written agreement between the parties is the Management Agreement executed on October 21, 2016. Filing 1-1; *see also* filing 1 at 2; filing 13 at 6.

The Management Agreement outlined the mutual obligations of the parties regarding management and operation of Pemberly Place. *Id.* It was effective beginning January 1, 2017 and had a term of five years. Filing 1-1 at 1, 7. Under the Management Agreement, Senior Housing had sweeping authority over personnel, regulatory compliance, operation and admissions policies, financial management, selection of legal counsel, facility maintenance, and marketing. *Id.* at 2-5. In exchange for Senior Housing's services, Highway 2 agreed to pay Senior Housing a management fee. *Id.* at 9.

According to Highway 2, in addition to responsibilities explicitly listed in the Management Agreement, Senior Housing "took on additional duties and responsibilities for the project" subject to Sections 2.1.20 and 2.1.17 of the Management Agreement. Filing 25 at 7-8, 10-11. Section 2.1.20 of the Management Agreement provides:

> Advisory Support. [Senior Housing] shall provide timely assistance without additional compensation with respect to special requests for graphs, charts, and information assimilation, market analysis, business plans, program planning and analysis relating to [Pemberly Place] and reasonably requested by [Highway 2].

Filing 1-1 at 5. Highway 2 asserts that the plain language of the agreement and, indeed, the understanding of the parties was that Senior Housing would act as an advisor to Highway 2 throughout the term of the agreement without additional compensation. Filing 25 at 7-8.

Highway 2 also relies on Section 2.1.17:

> Ancillary Services. Consistent with budgets approved by [Highway 2], [Senior Housing] will arrange for the provision of ancillary services not covered by this Agreement to [Pemberly Place] as needed, including without limitation marketing and promotion, training, construction, and care-related consultants, which may include nurse consultants, dietary consultants, occupational health nurses, physician/medical director and activities, social services and religious consultants.

Filing 1-1 at 4. Highway 2 describes this provision as a "catch-all" provision, which by its plain language obligated Senior Housing to provide services regarding "marketing and promotion" and "construction." *See* filing 25 at 10-11.

Highway 2 points to conduct by Senior Housing that supports its reading of Sections 2.1.20 and 2.1.17. Highway 2 alleges that Mason first prepared a Project Overview in November 2015 with "design considerations extending to

exterior appearance and parking, market demand trends and analysis, financial considerations and projections, and marketing projections and goals setting forth timetables so 'we can hit the ground running Day 1'" Filing 13 at 7. Furthermore, Highway 2 alleges that throughout 2016 and 2017 Senior Housing was integral in the planning, design and construction of Pemberly Place. *Id.* at 7-9. For example, Senior Housing recommended that Highway 2 "purchase more real property for the [p]roject," helped select an architect and general contractor and regularly communicated with both, and "participated in various walk-throughs during [] construction." *Id.* at 8-9.

Highway 2 claims that it began to discover problems with the project in December 2016. *Id.* at 8. And at some point, the relationship between the two parties broke down completely. In a succinct letter dated April 26, 2018 (filing 1-2) Highway 2 terminated the Management Agreement "pursuant to Section 6.1.6 of the Agreement."[1] In a subsequent letter dated May 16, 2018 (filing 1-3) Highway 2 also asserted that Senior Housing was guilty of gross

---

[1] Section 6.1.6 provides, in relevant part:

> 6.1.6 <u>Early Termination</u>. In the event this Agreement is terminated by [Highway 2] prior to the end of its Term for any reason not set forth under Sections 6.1.1, 6.1.2, 6.1.4 or 6.1.5, or as a result of [Highway 2]'s breach under Sections 6.1.1, 6.1.2, or 6.1.4, or as a result of damages to [Pemberly Place] under Section 6.1.3 (the date of which should be called the "**Early Termination Date**" [Senior Housing] shall be entitled to receive, upon giving [Highway 2] 180 days written notice, the following:
>
>     6.1.6.1 All Base Fees . . . due and owing through the Early Termination Date and all Base Fees that would be due and owing for six (6) months thereafter.
>
>     6.1.6.2 The Participation Fee [which pertains to monies due upon sale or refinancing of Pemberly Place] . . . .

Filing 1-1 at 8.

mismanagement and therefore it was terminating the agreement under Section 6.1.4.[2]

For its part, Senior Housing contends that it performed all its obligations under the Management Agreement, which contains "the only obligations owed by [Senior Housing] to [Highway 2]." Filing 20 at 1; *see also* filing 1 at 2. Furthermore, Senior Housing alleges that the April and May letters were the only times it was notified about any problems with its performance. Filing 1 at 2-3. Senior Housing also suggests that if Highway 2 did in fact terminate the contract due to mismanagement,[3] then Senior Housing was entitled to notice and an opportunity to cure under Section 6.1.2 of the Management Agreement.[4] Filing 20 at 4.

---

[2] "6.1.4 <u>Fraud, Misrepresentation or Gross Mismanagement</u>. Either party may terminate this Agreement upon a finding by any court having jurisdiction that the other party has engaged in fraud or gross mismanagement with regard to performance of obligations hereunder." Filing 1-1 at 7.

[3] The Court acknowledges that Senior Housing maintains that Highway 2 terminated under the early termination provision contained in 6.1.6 as stated in the April 26, 2018 letter. Filing 1 at 2-3.

[4] Section 6.1.2 provides, in relevant part:

> 6.1.2 <u>Uncorrected Material Breach</u>. In the event either party shall fail to discharge any of its non-monetary material obligations hereunder and such default shall continue for a period of forty-five (45) day after the other party has served notice of default, this Agreement may then be terminated at the option of the non-breaching party by notice thereof to the breaching party. No termination regarding a non-monetary obligation shall occur so long as attempts to cure the default are commenced within the thirty (30) day period and are continuing in good faith, even if the curing process extends beyond the thirty (30) day period.

Filing 1-1 at 7.

Currently before the Court is Senior Housing's motion to dismiss Highway 2's amended counterclaims for failure to state a claim upon which relief can be granted. Specifically, Highway 2 asserts six theories of recovery: (1) breach of contract, (2) negligence, (3) breach of the implied covenant of good faith and fair dealing, (4) negligent misrepresentation, (5) violations of the Nebraska UDTPA, and (6) unjust enrichment. The Court will deny Senior Housing's motion in part, and grant it in part, as set forth below.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

### III. DISCUSSION

#### 1. BREACH OF CONTRACT AND NEGLIGENCE

Whether Highway 2 has stated a claim for breach of contract and/or negligence requires the Court to determine (1) what duties Senior Housing allegedly owed to Highway 2 and their source—contract or tort—and (2) the alleged damages stemming from the breach of those duties.

Under Nebraska law, "the character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the

pleadings, with consideration being given to the facts which constitute the cause of action." *Henriksen v. Gleason,* 643 N.W.2d 652, 657 (Neb. 2002). To determine whether an action is based in contract or tort, a court must consider a complaint's "essential and factual allegations," rather than "legal terminology" used "or the form of a pleading." *Id.* Contract actions arise from a breach of duty imposed by private agreement and protect a litigant's "interest in or right to performance of another's promises." *Id.* Tort actions arise from a breach of a duty imposed by law and protect a litigant's "interest or right to be free from another's conduct which causes damage or loss to the plaintiff's person or property." *Id.*

(a) Contractual Duties

The parties agree that the Management Agreement is a legally binding contract that contains mutual obligations of the parties. Filing 1 at 2; filing 13 at 6. Therefore, at minimum, Senior Housing owed duties to Highway 2 in accordance with the terms of the Management Agreement and those duties arose as a matter of contract. But Highway 2 also claims that Senior Housing assumed "additional duties and responsibilities" outside of the Management Agreement. Filing 13 at 6.

First, Highway 2 suggests that the parties "entered into one *or more* contracts with [Senior Housing] for the provision of certain services." Filing 13 at 12 (emphasis supplied). However, Highway 2 fails to plead facts that establish any contract other than the Management Agreement was formed between the parties. *See generally* filing 13; *see also In re Estate of Ryan,* 925 N.W.2d 336, 341 (Neb. 2019) ("A contract requires an offer, acceptance, and consideration."). Mere assertion that the parties entered into contracts without factual allegations as to the who, what and when of contract formation is not enough. *See Twombly,* 550 U.S. at 555. Thus, Highway 2 has failed to meet its

burden under Rule 8(a) concerning the formation or breach of any contract other than the Management Agreement.

Second, Highway 2 relies on Sections 2.1.20 and 2.1.17 of the Management Agreement and Senior Housing's conduct in accordance with those two sections. *See* filing 25 at 7-12. And the allegations in Highway 2's counterclaim, taken as true, establish that Senior Housing did have duties under Sections 2.1.20 and 2.1.17 to provide advisory support and ancillary services related to design, construction and marketing. *See* filing 13 at 6-12. The duties required by Sections 2.1.20 and 2.1.17 would also be contractual and not imposed by law.

In order to recover for breach of contract, a plaintiff must plead and prove the existence of a promise, a breach of that promise, damages, and satisfaction of any conditions precedent to the defendant's duty to perform. *Henriksen*, 643 N.W.2d at 658. The Court concludes that Highway 2's allegations state a plausible claim for breach of contract.

While not explicit in each instance, Highway 2's amended counterclaim does allege that Senior Housing breached various provisions contained in Section 2.1 of the Management Agreement. *See* filing 13 at 11; filing 1-1 at 2-5. For example, Highway 2 alleges that Senior housing failed to provide support to the full-time administrator, arrange for appropriate consultants, and adequately publicize and market Pemberly Place. Filing 13 at 11. Highway 2 has also alleged facts, taken as true, to establish that Senior Housing breached the duties it owed under Sections 2.1.20 and 2.1.17 to provide advisory and ancillary services regarding planning, design, and construction. Filing 13 at 11-12. Finally, Highway 2 alleges that it was damaged by Senior Housing's failures. Filing 13 at 12. That is enough to initially state a breach of contract claim.

(b) Tort Duties

Highway 2 suggests that Senior Housing also had tort duties to: (1) "act with care, skill, reasonable expediency, and faithfulness," and (2) to "use the skill and knowledge ordinarily possessed by other similarly situated companies in good standing in the same or similar localities and further had a duty to perform in a non-negligent manner." Filing 13 at 13. The language used by Highway 2 can be generally attributed to two separate legal standards. One is negligent performance of a contract: "[A]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done. A negligent failure to observe any of these conditions is a tort as well as a breach of contract." *Lincoln Grain, Inc. v. Coopers & Lybrand*, 345 N.W.2d 300, 305 (Neb. 1984). And the other is for breach of a services contract: "In order to prove breach of a service contract, the plaintiff must show that the defendant failed to exercise the skill and knowledge normally possessed by members of that trade in good standing in similar communities." *Henriksen*, 643 N.W.2d at 658.

Highway 2 also asks the Court to not extensively "delve into" the economic loss doctrine for the purpose of this motion. Filing 25 at 19. However, the economic loss doctrine does prohibit tort actions where the only damages claimed are economic losses. *Lesiak v. Cent. Valley Ag Coop., Inc.*, 808 N.W.2d 67, 80 (Neb. 2012) Economic losses are "commercial losses, unaccompanied by personal injury or other property damage." *Id.* at 81. Other property is defined as "property other than the property that was sold pursuant to the contract." *Id.* at 83. In Nebraska, the doctrine's application has been limited to cases where only economic losses are claimed and are either "(1) caused by a defective product or (2) caused by an alleged breach of a contractual duty, where no tort duty exists independent of the contract itself." *Id.*

Here, Highway 2 has not alleged facts that support imposing an independent tort duty on Senior Housing, so the economic loss doctrine bars Highway 2's negligence claim. Highway 2 has only alleged economic losses— monies paid to Senior Housing under the Management Agreement, construction and marketing expenses to cure Senior Housing's "failures," and lost revenue. Filing 13 at 11-12. Highway 2 has made no factual allegations that suggest personal injury or damage to "other property." *See Lesiak*, 808 N.W.2d at 81. Therefore, Highway 2's claims fall squarely in the ambit of the economic loss doctrine.

Highway 2 has also failed to sufficiently allege an independent tort duty. Highway 2 generally alleges that Senior Housing did not meet the appropriate standard of care, but it does not explain how a standard of care arises independent of the Management Agreement between the two parties (*i.e.*, a professional negligence theory). *See, e.g. Getzschman v. Miller Chem. Co.*, 443 N.W.2d 260 (Neb. 1989) (breach of contract and professional negligence of architect); *Lincoln Grain, Inc.*, 345 N.W.2d 300 (breach of contract and professional negligence of accountant); *see also Bixenmann v. Dickinson Land Surveyors, Inc.*, 882 N.W.2d 910, 914 (Neb. 2016) (describing the standard for establishing a profession for the purpose of professional negligence). Furthermore, Highway 2's recitation of the standards from *Lincoln Grain, Inc.* and *Henriksen*, without corresponding factual allegations, fails to establish a plausible claim for tort relief. *See Iqbal*, 556 U.S. at 679.

For these reasons, the Court will grant Senior Housing's motion to dismiss as to Highway 2's negligence claim.

(c) Satisfaction of Conditions Precedent

Senior Housing claims that Highway 2's breach of contract claims should be dismissed because of Highway 2's failure to allege satisfaction of all

conditions precedent. In particular, Senior Housing argues that under Section 6.1.2 of the Management Agreement, it was entitled to notice of its alleged breaches and an opportunity to cure. Filing 20 at 3-5. The Court disagrees.[5]

Section 6.1.2 requires notice prior to *termination* for "uncorrected material breach," but does not limit either party's ability to sue for material breach. *See* filing 1-1 at 7. A contract must be construed as a whole, and, if possible, effect must be given to every part thereof. *Big River Constr. Co. v. L & H Props., Inc.*, 681 N.W.2d 751, 756 (Neb. 2004). And Section 6.2 of the Management Agreement provides that "[e]xcept as set forth in Section 6.1.6, the remedies in this Agreement provided in favor of the parties shall not be deemed exclusive or alternative, but shall be cumulative and shall be in addition to all other remedies in its favor existing at law or in equity." Filing 1-1 at 8. Suing for breach of contract is quite obviously a remedy in Highway 2's favor existing at law. *See Henriksen*, 643 N.W.2d at 658.

It remains possible, of course, that *both* parties breached the Agreement. Notice may, or may not, have been a condition precedent to terminating the Agreement. But it's not a condition precedent for a lawsuit based on a prior material breach. Accordingly, the Court rejects Senior Housing's argument that Highway 2 failed to satisfy a condition precedent and concludes that, read as a whole, Section 6 of the Management Agreement allows Highway 2 to sue for breach of contract.

---

[5] Notably, Highway 2 has never claimed it terminated the Management Agreement pursuant to Section 6.1.2. *See* filing 1-2; filing 1-3; *see also* filing 25 at 4. Rather, Highway 2 argues that it is terminating the agreement pursuant to Section 6.1.4, which allows a party to terminate "upon a finding by any court having jurisdiction that the other party has engaged in fraud or gross mismanagement with regard to performance of obligations hereunder." Filing 25 at 4; filing 1-1 at 7.

(d) Effect of the Integration Clause

Senior Housing also argues that the existence of Section 11 of the Management Agreement, an integration and no oral modifications clause, precludes Highway 2 from arguing breach of any agreement other than the written Management Agreement. Filing 20 at 5; *see* filing 1-1 at 10. The Court agrees with Senior Housing insofar as Highway 2 alleges the existence of "one or more contracts," filing 13 at 12, but concludes that Highway 2 has alleged facts which, taken as true, could indicate the parties' modification of the Management Agreement.

Nebraska has long held that "the terms of a written executory contract may be changed by a subsequent parol agreement prior to any breach of contract." *Johnson Lakes Dev., Inc. v. Cent. Neb. Pub. Power & Irrigation Dist.*, 568 N.W.2d 573, 582 (Neb. 1997). Even a contractual provision requiring that modification or waiver of terms be in writing may be waived by acts or conduct. *Pearce v. ELIC Corp.*, 329 N.W.2d 74, 79 (Neb. 1982). At this early stage in the litigation and from the facts alleged in Highway 2's counterclaim it is possible that the parties may have modified or added to the Management Agreement after it was executed. *See* Filing 13 at 7-10.

The Court therefore rejects Senior Housing's argument that the integration and no oral modifications clause of the Management Agreement precludes Highway 2's breach of contract claim. And having determined that Highway 2 has alleged facts which state a claim for breach of contract, Senior Housing's motion is denied as to this claim.

2. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Highway 2 claims that Senior Housing, in allegedly providing unreasonable and improper advice, breached the covenant of good faith and fair dealing. Filing 13 at 15. Highway 2 also alleges that, to the extent Senior

Housing denies responsibility for advising Highway 2 on certain decisions (*i.e.* construction), it had a duty to inform Highway 2 of its limitations. Filing 13 at 16.

The implied covenant of good faith and fair dealing exists in every contract and requires that none of the parties to the contract do anything which will injure the right of another party to receive the benefit of the contract. *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 400 (Neb. 2003). The nature and extent of the implied covenant "is measured in a particular contract by the justifiable expectations of the parties." *Id.* "Where one party acts arbitrarily, capriciously, or unreasonably, that conduct exceeds the justifiable expectations of the second party." *Id.* The question of a party's good faith in the performance of a contract is a question of fact. *Id.* at 396-97.

The allegations made by Highway 2 in its amended counterclaim, taken as true, support a breach of the covenant of good faith and fair dealing. Highway 2 alleges that its justifiable expectations as measured by the Management Agreement were that Senior Housing would provide extensive advisory and support services "related to the construction, design, management and marketing" of Pemberly Place. Filing 13 at 15. Highway 2 also pleads that Senior Housing deprived it of those justifiable expectations and that Highway 2 was damaged as a result. *Id.* at 15-16.

Senior Housing argues that what Highway 2 is really trying to do is use the implied covenant of good faith and fair dealing as a back door, to bring new obligations into the Management Agreement that it did not originally contain. *See* filing 20 at 10. But that's not necessarily so. The parties obviously dispute precisely what obligations were and were not encompassed by the Management Agreement, and the Court cannot definitively sort out that relationship at this stage of the proceeding. So, it remains possible that Senior

Housing was performing services that were *not* required by the Management Agreement, but that Senior Housing's poor performance of those services had the effect of preventing Highway 2 from realizing the benefit it reasonably expected to realize from the services that *were* required by the contract. And that states a claim for violation of the covenant of good faith and fair dealing. *See Spanish Oaks*, 655 N.W.2d at 400. Senior Housing's motion to dismiss will be denied as to this claim.

### 3. NEGLIGENT MISREPRESENTATION

Highway 2 claims that Senior Housing made negligent or careless representations for which it is liable. To state a claim for negligent misrepresentation a plaintiff must allege that (1) a representation was made; (2) the representation was false; (3) when made, the defendant knew the representation was false or acted carelessly or recklessly in ascertaining its truth; (4) the defendant intended the plaintiff to rely on the representation; (5) the plaintiff did in fact rely; and (6) the plaintiff was damaged as a result. *Zawaideh v. Neb. Dep't of Health & Human Servs. Regulation & Licensure*, 825 N.W.2d 204, 212 (Neb. 2013); *Lucky 7, LLC v. THT Realty, LLC*, 775 N.W.2d 671, 675 (Neb. 2009). Proof of a contract is not required, and "although contracts are often the end result of the plaintiff's reliance," a negligent misrepresentation claim arises out of the defendant's tortious actions independent of contract. *Zawaideh*, 825 N.W.2d at 212-13.

Highway 2 stated a claim for negligent misrepresentation. Highway 2 alleges that Mason and Senior Housing prepared documents and participated in decision-making processes that influenced the design and construction of Pemberly Place. Filing 13 at 7-8. Highway 2 further alleges that Mason and Senior Housing provided "knowledge, advice, recommendations and expertise" regarding virtually all the business decisions made concerning Pemberly Place.

Filing 13 at 8. In fact, Senior Housing itself alleges that Highway 2 "did not have any first-hand experience or knowledge as to how to manage an assisted care facility," and "entered into the Management Agreement with Senior Housing with the intention of getting the facility fully operational. . . ." Filing 1 at 4.

Highway 2 further alleges that the representations made by Senior Housing were false and caused damage to Highway 2. Highway 2 alleges that Senior Housing negligently represented that Pemberly Place did not require any two-bedroom units which later proved to be untrue. Filing 13 at 7, 12. Highway 2 also alleges that its reliance on Senior Housing's recommendations and expertise resulted in "removal and replacement of newly installed building materials," construction delays, and unnecessary expense. Filing 13 at 11-12.

Therefore, the Court will deny Senior Housing's motion to dismiss as to Highway 2's claim for negligent misrepresentation.

### 4. VIOLATION OF NEBRASKA DECEPTIVE TRADE PRACTICES ACT

Highway 2 claims that Senior Housing engaged in practices that violate the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 *et seq*. (UDTPA). Filing 13 at 17-18. The UDTPA, however, provides injunctive relief for "[a] person likely to be damaged," *see* § 87-303(a), and therefore provides relief from future damage, not past damage. *Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 248 (Neb. Ct. App. 2007). Highway 2 asserts that it has already been damaged by the actions of Senior Housing, but has not alleged how it would be damaged in the future. Accordingly, the Court will grant Senior Housing's motion on these grounds, and Highway 2's UDTPA claim will be dismissed.

### 5. UNJUST ENRICHMENT

Highway 2's final claim is for unjust enrichment. While contract claims supersede unjust enrichment (or quasi-contract) claims, a plaintiff is permitted to allege both. *See* Fed. R. Civ. P. 8(e); *see also Bloedorn Lumber Co. of North Platte v. Nielson*, 915 N.W.2d 786, 793 (Neb. 2018). A quasi-contract is implied in law "when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense." *Id.* at 792 (quoting *City of Scottsbluff v. Waste Connections of Neb.*, 809 N.W.2d 725, 738 (Neb. 2011)). Where recovery on an express contract theory proves unviable, recovery may still be had on an unjust enrichment theory. *Id.* at 793. An unjust enrichment claim requires the plaintiff to allege "(1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006).

Highway 2 has alleged facts that, at least initially, state a claim for unjust enrichment. Highway 2 alleged that payments were made to Senior Housing in the amount of $7,500 per month beginning January 1, 2017 and continuing until Pemberly Place obtained a certificate of occupancy and all other licenses and permits. Filing 13 at 8. Highway 2 also alleged that Senior Housing is not entitled to those payments due to deficiencies in its performance. *See* filing 13 at 10-12.

The Court therefore denies Senior Housing's motion to dismiss as to Highway 2's claim for unjust enrichment, without prejudice to a later motion if the contract claim is deemed to be viable.

IT IS ORDERED:

1. Senior Housing's motion to dismiss Highway 2's amended counterclaims (filing 19) is granted in part.

2. Highway 2's counterclaims for negligence and violations of the Nebraska Deceptive Trade Practices Act are dismissed.

3. Senior Housing's motion to dismiss is denied in all other respects.

Dated this 25th day of September, 2019.

BY THE COURT:

_/s/ John M. Gerrard_
John M. Gerrard
Chief United States District Judge