IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SENIOR HOUSING MANAGERS, LLC, an Oregon limited liability company,<br><br>　　　　　Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>HIGHWAY 2 DEVELOPMENT, LLC, d/b/a Pemberly Place, a Nebraska limited liability company,<br><br>　　　　　Defendant and Counterclaimant. | 4:18-CV-3167<br><br>MEMORANDUM AND ORDER |

　　　　This matter is before the Court on the parties' motions in limine. Senior Housing moves to exclude the expert testimony of Ashley Blankenship regarding Senior Housing's alleged breach of the Management Agreement. Filing 77. Highway 2 moves to exclude the expert testimony of Nate Underwood regarding Senior Housing's alleged unfair competition and unjust enrichment claims. Filing 74.

　　　　The Court dismissed Senior Housing's unfair competition damages for its breach of contract claim and dismissed its "unfair competition/unjust enrichment" claim entirely. So, Highway 2's motion to exclude Mr. Underwood's testimony will be denied as moot. And for the reasons below, Senior Housing's motion to exclude Ms. Blankenship's testimony will be denied.

BACKGROUND

For a detailed recitation of the facts, see the Court's order on the parties' cross-motions for partial summary judgment filed contemporaneously with this order. Here, the Court includes only additional facts relevant to the remaining motion in limine.

Highway 2 development retained Ashley Blankenship to render an opinion as to whether "[Senior Housing] provided to [Highway 2] all that was promised in the original [M]anagement [A]greement." Filing 79-2 at 3. Blankenship has a 15 year history as a "developer, project manager, owner, operator, caregiver, administrator, [r]egional [d]irector, V.P. of operations and consultant for [a]ssisted [l]iving [c]ommunities." Filing 79-2 at 3; *see* filing 79-1 at 4-6. She has served as the chair of the National Center for Assisted Living and the chair of the Health Guidelines Revision Committee–Facility Guidelines Institute. The Facility Guidelines Institute assists in the development of guidelines for the design and construction of assisted living facilities. Filing 79-2 at 4.

Blankenship testified that she has negotiated three management agreements for assisted living facilities in Kansas, Arkansas and Florida. Filing 79-1 at 5. She ultimately contracted with the facilities to oversee the projects during construction, but did not take on operations and management responsibilities. *See* filing 79-1 at 5.

Before formulating her opinion, Blankenship reviewed the Management Agreement (filing 79-4), Highway 2's responses to Senior Housing's interrogatories, Highway 2's Answer and Counterclaim, and deposition testimony from several witnesses. She also had meetings and calls with Helen Crunk, Jessica Lindersmith, and Monte Froehlich. She was not provided any of the project overviews, architectural plans, financial records, resident forms,

or correspondence between the parties. Blankenship says she also compared the Management Agreement with various industry publications on development and construction of assisted living facilities and Nebraska regulations, and relied on her own experience, to arrive at her opinion. Filing 79-2 at 3.

Some portion of Blankenship's report seems to interpret the Management Agreement and express opinions on the reasonableness of the provisions. *See* filing 79-2 at 7-9. Similarly, Blankenship testified to her opinion as to what obligations were and were not contained in the management agreement. *See* filing 79-1 at 13-15.

But Blankenship also opines as to specific instances of Senior Housing's "gross mismanagement" including: (1) the width and length of hallways, and the location of the kitchen and kitchen storage, causing safety issues for staff and residents; (2) an improper mix of apartment types based on the market; (3) design oversights in the apartments including shower curtains and appliance finishes; (4) the initial lack of planning for outdoor space resulting in an outdoor space that is too small for the facility; (6) lack of a whirlpool room, (7) failure to license the medical clinic correctly; and (8) lack of on-site presence and employee supervision, particularly in the months immediately preceding the opening of the facility. Filing 79-2 at 9-11. Blankenship testified that her definition of gross mismanagement came from Webster's dictionary and was "actions taken by a person that did not fulfill the responsibilities that could risk or harm the mission of the public entity or the public client." Filing 79-1 at 7.

## DISCUSSION

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702 the trial judge acts as a "gatekeeper" screening evidence for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993); *Polski v. Quigley Corp.*, 538 F.3d 836, 838-39 (8th Cir. 2008).

But Rule 702 and *Daubert* still call for the liberal admission of expert testimony. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014). And judges are not meant to weigh or assess the correctness of competing expert opinions. *Id.* As long as an expert's testimony rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the Court at the outset. *Id.*

To that end, generally the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. *Bonner v. ISP Techs, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *Id.* at 930.

Here, Senior Housing moves to exclude Blankenship's testimony because (1) she opines that Senior Housing failed to do things that weren't required under the management agreement (e.g. design and construction), (2)

Blankenship isn't qualified to render an opinion in this case, and (3) Blankenship did not define the standard of gross mismanagement she used to formulate her opinions. *See* filing 78.

Senior Housing's first argument relies on its assertion that the Management Agreement only requires Senior Housing to manage and operate a fully developed facility. *See* filing 78 at 6-11. But the Court rejected that argument in its ruling on Senior Housing's motion for partial summary judgment. It will be similarly rejected here.

Second, the Court is not persuaded by Senior Housing's argument that because Blankenship hasn't entered into an exclusive management agreement or worked in Nebraska, she is not qualified to offer opinions in this case. *See* filing 78 at 6-8. Blankenship testified that she's been working in assisted living facilities in some capacity since 1992 when she was in high school. Filing 79-1 at 4. Since then, she's held a variety of roles from caregiver to owner and developer. *See* filing 79-2 at 3. She's also served on boards and committees of national organizations that promulgate best practices for the development of assisted living. Filing 79-2 at 4. That kind of personal and professional experience makes her a reliable and helpful source of information for the jury under the plain text of Rule 702. *See David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1014 (8th Cir. 2012). And of course, Senior Housing is welcome to explore Blankenship's experience and the facts she relied on during cross-examination. *See Bonner*, 259 F.3d at 929.

Finally, Senior Housing challenges Blankenship's opinion because she did not define gross mismanagement or the applicable standard of care, meaning her opinion is based on subjective belief and speculation. *See* filing 78 at 11-12. Not so. Highway 2 correctly points out that Blankenship has compared Senior Housing's performance under the Management Agreement to

published industry standards, Nebraska regulations and her own professional experience. *See* filing 83 at 10; filing 84-1 at 12. And based on her experience with and review of those sources, she opined that Senior Housing breached the Management Agreement and grossly mismanaged its obligations. *See generally* filing 79-2. Again, Senior Housing is encouraged to test Blankenship's opinion at trial with competing expert testimony and cross-examination, but her opinion is not so fundamentally unsupported that it can offer no assistance to the jury. *See Johnson*, 754 F.3d at 562; *Bonner*, 259 F.3d at 930. Accordingly,

IT IS ORDERED:

1. Highway 2's motion in limine (filing 74) is denied as moot.

2. Senior Housing's motion in limine (filing 77) is denied.

Dated this 28th day of June, 2021.

BY THE COURT:

*[signature: John M. Gerrard]*

John M. Gerrard
Chief United States District Judge